UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**F I L E D**

JAN 2 0 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-39-GWU

TED E. HENRY,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to

1

Henry

        Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

      Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

3

Henry

established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242

(6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Henry

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Ted E. Henry, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of L5-S1 spondylolisthesis and advanced disc degeneration of the cervical spine. (Tr. 17). Nevertheless, the ALJ determined that Mr. Henry retained the residual functional capacity to perform medium level exertion with occasional stooping, and proceeded to apply Rules 203.29 and 203.22 of the Commissioner's Medical-Vocational Guidelines (the "grids") applicable to a person of Mr. Henry's age, education, and work experience, which direct a conclusion of "not disabled." (Tr. 18-21). The Appeals Council declined to review, and this action followed.

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Henry alleged disability primarily due to musculoskeletal conditions, including spondylosis of the lumbar spine, with pain radiating down his right leg (Tr. 61, 335), torn rotator cuffs in both shoulders (which had required surgery on the left side with much improvement, although the right side now needed surgery) (Tr. 61, 334), neck pain, including an old cervical fusion with radiation of pain into the arms, depression and anxiety (Tr. 336-7).

7

Medical records in the transcript include MRI scans of the lumbosacral and cervical spines from 1999 and 2001, prior to the alleged onset date of January 3, 2003, showing a mild bulge and mild spondylolisthesis at L5-S1 and a fusion of C6-C7 with diminished space at that level and that C7-T1, along with osteophyte formation. (Tr. 133-4). A neurosurgeon, Dr. Vaughn, advised the plaintiff in June, 2001 to manage his lower back pain non-operatively as long as possible, and to avoid long periods of driving, bending, twisting, and heavy lifting. (Tr. 121).

The plaintiff also had an MRI of the left shoulder in May, 2001, showing a probable tear of the rotator cuff. (Tr. 132).

State agency physicians who reviewed the record in 2003 reviewed these records and concluded that the plaintiff's complaints of low back pain and left shoulder pain should be given only partial credibility, as they were "not felt to be consistent with objective clinical findings as far as function is concerned." (Tr. 177). They determined that the plaintiff would have a functional capacity for medium work with occasional stooping, a finding that was adopted by the ALJ. (Tr. 169-76, 210-17).

Subsequent to these opinions, significant amounts of additional evidence were submitted.

Among the new records was evidence about the plaintiff's shoulder from Dr. Scott Mair, who noted in late May, 2003 that the plaintiff had atrophy and obvious pain with positive impingement signs in his left shoulder. The doctor obtained a new

8

Henry

MRI showing a "significant" rotator cuff tear. (Tr. 239, 241). Dr. Mair performed surgery, and reported that the plaintiff subsequently improved until by January, 2004 he could report that strength was nearly back to normal and there was a full range of motion of the shoulder. (Tr. 264). On March 23, 2004 he allowed the plaintiff to return to all activities as tolerated. (Tr. 263). However, the plaintiff was complaining of neck problems, and he was ultimately referred to Dr. Philip Tibbs for a cervical spine evaluation. (Tr. 264).

New records also showed that, meanwhile, the plaintiff had continued with pain management at the office of Neurosurgeon John Gilbert after 2001. Although initially improved (Tr. 249), after complaints increased neck and back pain, one of the other physicians at the office ordered new MRI scans of the cervical and lumbosacral spines, which were performed on September 27, 2003. (Tr. 258). Dr. Gilbert interpreted them as showing degenerative disc disease at L5-S1, a posterior annular tear at this level, mild spondylolisthesis and a benign anterior compression fracture at T12, an old fusion at C6-7, and a small protrusion at C-5-6 and C7-T1. (Tr. 243, 258). He planned to obtain a referral for surgical opinion, and added methadone to the plaintiff's pain medications.[1] (Id.).

---

[1] This note is signed with Dr. Gilbert's name, but the plaintiff testified at the administrative hearing that Dr. Lingreen had given him the methadone, which he could not tolerate, and, for this reason and because he had not wanted to allow Dr. Lingreen to perform epidural injections, he was now receiving pain medication management from a Dr. Gutti. (Tr. 335-6).

Henry

Dr. Phillip Tibbs examined the plaintiff one time, on March 16, 2004, for evaluation of his cervical problems. He noted that Mr. Henry had a fusion at C5-C6 as a result of a 1978 motor vehicle collision, and was being treated for "bilateral" rotator cuff injuries. He also noted that the plaintiff had a lower back problem and constant right leg pain, which was worse with standing. (Tr. 261). He found a good range of motion on flexion and extension with a limited lateral rotation of the neck. (Id.). Mr. Henry had normal grip strength in both the right and the left hand, but his biceps and triceps were somewhat weaker and Dr. Tibbs could not elicit any left bicep or tricep reflexes. (Id.). He reviewed the MRI scans from September 27, 2003 and commented that the lumbar spine films showed degenerative disc disease with a "questionable" annulus tear at L5-S1. (Tr. 262). Dr. Tibbs concluded that he did not see any "discrete radiculopathy" and did not see any surgical pathology in the neck. (Id.). He advised a course of "e-stim" and a TENS unit. (Id.). No functional restrictions are suggested.

The plaintiff's treating family physician, Dr. George Chaney, gave a deposition on May 17, 2004, and testified, among other things, that he had been Mr. Henry's family physician for more than 10 years, and his problems included chronic left shoulder pain with a torn rotator cuff which had required two surgeries, a lesser problem with chronic pain in the right shoulder, and chronic neck and back pain with advanced disc disease throughout the entire spine, including spondylolisthesis and lumbar radiculopathy. (Tr. 270). He had referred his patient to Dr. Lingreen for

10

treatment of chronic pain because he was not a surgical candidate, although Dr. Chaney stated that he disagreed with Dr. Tibbs that there was no evidence of radiculopathy, based on the plaintiff's history and physical findings; Dr. Chaney also had the recent MRIs available for review and described the findings in detail. (Tr. 270-2, 275). His patient had anxiety and depression, partly related to his pain, which Dr. Chaney felt was real. (Tr. 270). He specifically testified that the plaintiff had underlying symptoms that could reasonably be expected to cause moderate to severe pain. (Tr. 279). Dr. Chaney had referred Mr. Henry to a psychiatrist, Dr. Douglas Ruth, for treatment of his depression, and was generally familiar with his course of treatment. (Tr. 274, 277).[2]   In his opinion, Mr. Henry still had some depression despite the medication Celexa prescribed by Dr. Ruth. (Tr. 277). In his opinion, the plaintiff was not capable of full-time work. (Tr. 287).

Dr. Chaney prepared both physical and mental residual functional capacity assessments at the time of the deposition. He opined the plaintiff would be physically limited to sedentary level lifting with less than full-time standing and walking in addition to needing the option of sitting or standing at will. (Tr. 290-2). Non-exertional restrictions included only occasional twisting, bending, crouching, climbing, crawling, and balancing, and a decreased ability to reach, handle, push,

_____

[2]Dr. Ruth had treted Mr. Henry beginning in October 2001, at which time he diagnosed a major depressive disorder and prescribed Celexa, an anti-depressant. (Tr. 157-9). By April, 2002, the plaintiff reported that he was much better, and in December, 2002, Dr. Ruth reported to Dr. Lingreen that the plaintiff had had a "resolution of depression" with Celexa. (Tr. 151).

11

and pull, along with a need to avoid even moderate exposure to cold, heat, wetness, humidity, and hazards. (Id.). Dr. Chaney opined that the plaintiff would have a "fair" psychological ability in many areas, which was defined on the form as an ability to perform the activity "satisfactorily some of the time." (Tr. 293-4).

The ALJ rejected Dr. Chaney's opinions, stating that they were inconsistent with the treatment record and objective clinical evidence. Specifically, he noted that at the last examination by Dr. Mair, it had been reported that the left shoulder no longer had any symptoms, that his neck and low back pain had been "conservatively treated," and that his psychiatrist had noted a good response to medication prescribed for depression. (Tr. 17).

There is at least some evidence from which the ALJ could have concluded that Mr. Henry's left shoulder problem and depression had resolved, as described above. (Tr. 151, 263). However, Dr. Chaney was the only examining source following the September, 2003 MRI scans to give an opinion which encompassed functional restrictions resulting from the neck and back problems. Dr. Tibbs advised against surgery and indicated that there was no true radiculopathy, but these findings do not necessarily equate to the functional restrictions previously given by the state agency reviewers. Generally speaking, the opinion of a treating source, such as Dr. Chaney, is entitled to greater weight than a one time examiner such as Dr. Tibbs, and even to controlling weight if the opinion is uncontradicted and supported by objective signs, symptoms, and laboratory findings. See, e.g., Harris

12

v. Heckler, 756 F.2d 966, 973 (6th Cir. 1984). In the present case, since there is

some legitimate question about Dr. Chaney's conclusions regarding left shoulder

limitations and mental restrictions, given opinions by the plaintiff's treating specialists

in these areas, a finding that Dr. Chaney's opinions regarding the neck and lower

back problems should result in an award of benefits is not appropriate.

Nevertheless, the ALJ's acceptance of the restrictions of the non-examining state

agency sources who did not have access to the entire record over that of a treating

physician who did have such access was improper, and a remand will be required

for further consideration. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).[3]

This the ___20___ day of January, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[3]The Court notes in passing that additional evidence was submitted to the
Appeals Council, including an NCV/EMG showing lumbar radiculopathy and right tibial
neuritis (Tr. 310), in contrast to Dr. Tibbs' opinion that there was no radiculopathy. There
was also a more recent letter from Dr. Ruth, the psychiatrist, indicating some recurrence
of depressive symptoms and a resulting increase in anti-depressive medication. (Tr.
324). While these records are not part of the Court's substantial evidence review on
appeal, they may be considered along with other new evidence on remand.

13